UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 2:15-cr-43 ) |
| MOHAMED FADIGA, | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Mohamed Fadiga is charged with one count of possessing counterfeit or unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3) after a police officer stopped a vehicle he was riding in and found more than 100 gift cards in Fadiga's wallet and in the vehicle. (DE 1; DE 12.) Fadiga moved to suppress the evidence seized from him on grounds that the police officer had illegally extended the traffic stop beyond the time needed to issue a warning to the driver for the offense that prompted the stop (expired plates). (DE 23.) After an evidentiary hearing on the motion (DE 30), Judge Lozano denied the motion, finding that a combination of factors during the traffic stop created reasonable suspicion that justified extending the stop. (DE 36 at 12–13.) Judge Lozano subsequently recused himself from the case, and it was reassigned to me. (DE 73.) Fadiga now asks me to reconsider Judge Lozano's order denying his motion to suppress. (DE 79.) For the reasons below, the motion is denied.

## DISCUSSION

Even though there is no federal rule of criminal procedure that authorizes motions to reconsider, such motions in "criminal prosecutions are proper and will be treated just like motions in civil suits." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010); *see also, e.g.*, *United States v. Healy*, 376 U.S. 75, 77–80 (1964). The purpose of a motion to reconsider is "to correct manifest errors of law or fact or to present newly discovered evidence" that could not discovered earlier in the proceedings. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 60. To prevail on a motion for reconsideration based on newly discovered evidence, "the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *Caisse Nationale*, 90 F.3d at 1269–70 (internal brackets, quotation marks, and citation omitted).

Officer Williams, the arresting officer in this case, was working on a task force at the time he arrested Fadiga. The thrust of Fadiga's motion for reconsideration is that he has newly discovered evidence that "the official mission of the task force is different tha[n] what Officer Williams testified in the suppression hearing." (DE 79 at 2.) The newly discovered evidence is a memorandum that Fadiga received via discovery, which states that the "focus" of the task force operating on the highways the day Fadiga was arrested was "the detection and interdiction of illegal drugs and weapons on the

2

highways." (DE 79-1 at 1.) Fadiga claims that this is significantly different from the officer's testimony at the suppression hearing that the focus of the task force was "all crimes, all threats" and "[a]ll crimes in general." (DE 30 at 8:24–25, 9:1–3.) Fadiga argues that this difference is important because Judge Lozano "placed considerable weight on what the Court thought was the purpose of the task force[.]" (DE 79 at 2.) The government claims that the information in the memorandum is not newly discovered because it was available online when Fadiga filed his motion to suppress and, even if it wasn't, Fadiga could have subpoenaed it earlier than he did (months after his motion to suppress and Judge Lozano's order). (DE 80 at 13–14.)

Fadiga has not shown he is entitled to reconsideration of his motion to suppress based on new evidence. Although he claims he was unable to subpoena the memorandum before Judge Lozano granted his Motion for Issuance of Subpoena (DE 47), nothing prevented him from filing that motion and subpoenaing information from the Indiana State Police earlier than he did. Second, a simple internet search of the words Indiana and "Domestic Highway Enforcement"—words that Fadiga's attorney used at the suppression hearing in June 2015 (DE 30 at 8:7–8)—would likely have provided Fadiga as much information about the task force's focus on drugs as the memorandum does. *See, e.g.*, Lake County High Intensity Drug Trafficking Area: DHE, www.lakecountyhidta.com/dhe.html (last visited May 17, 2016) (dated 2012 and noting that the task force "is an interdiction and enforcement activity designed to disrupt the flow of drugs on Lake County highways"). Fadiga simply has failed to show that he

"could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *See Caisse Nationale,* 90 F.3d at 1269–70 (internal brackets, quotation marks, and citation omitted).

But suppose for the moment that Fadiga could not have found the information in the memorandum before Judge Lozano ruled on the motion to suppress. It would not have made a difference. That's because the "new" evidence Fadiga presents is irrelevant to the question of whether Fadiga's Fourth Amendment rights were violated. After the original traffic stop was underway, the officer could continue the stop without violating Fadiga's rights, so long as he was still conducting inquiries related to the stop *or* if he had developed reasonable suspicion of another crime. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) ("Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop [such as] checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."); *United States v. Martin,* 422 F.3d 597, 602 (7th Cir. 2005) ("[I]nformation lawfully obtained during that period may provide the officer with reasonable suspicion of criminal conduct that will justify prolonging the stop to permit a reasonable investigation.") (internal citations omitted). To determine whether an officer had reasonable suspicion justifying a stop, courts should consider "the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and behavior and the characteristics of the suspect . . . context matters."

*United States v. Ruiz,* 785 F.3d 1134, 1141 (7th Cir. 2015) (internal quotation marks and citation omitted).

Fadiga does not challenge that the officer had reasonable suspicion to make the original traffic stop. (DE 23.) When the officer asked the driver some very basic questions, including who owned the car and where they were going, the driver couldn't or wouldn't answer them. (*See* DE 30 at 14:19–15:11, 18:8–14 (testifying that the driver did not know who owned the car or where they were going but indicated that Fadiga did).) That lack of information is what led the officer to ask Fadiga for identification and to ask him about the car. (*Id.*) At that point, the officer was still conducting the original stop. *See Rodriguez v. United States,* 135 S. Ct. at 1615 (stating that inquiries typically incident to a traffic stop are "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.") (internal quotation marks, brackets, and citations omitted). Fadiga's answers were also odd—for example, he told the officer his friend owned the car but then produced a document indicating that it was rented (DE 30 at 15:15–22.) In addition, when he opened his wallet to take out his identification, and the officer saw that Fadiga had "numerous cards in his wallet, inside every pocket . . . including the pocket where cash would normally go." (*Id.* at 17:11–19.) These circumstances created additional reasonable suspicion of a crime sufficient to justify extending the traffic stop — a traffic stop that no one claims was illegal. The driver's expired plates, followed by the driver's odd answers and lack of knowledge about the

5

car and where he was driving, followed by Fadiga's own weird answers, and a wallet bursting with cards was a breadcrumb trail that the officer was justified in following and that led the officer to ultimately request (and receive) consent to search the car.

In sum, I fully agree with Judge Lozano's reasoning in his order denying the motion to suppress. Judge Lozano made no manifest error of law, he thoroughly considered the issue, and he issued his opinion after an evidentiary hearing at which he was able to assess the credibility of the witnesses. I see no reason Mr. Fadiga should be permitted to relitigate this issue in the absence of convincing evidence that Judge Lozano got it wrong. None of Mr. Fadiga's "newly discovered evidence" causes me to believe that Judge Lozano's decision was incorrect. Indeed, the new evidence is largely immaterial.

## **CONCLUSION**

For the reasons above, Fadiga's Motion for Reconsideration (DE 79) is DENIED.

**SO ORDERED.**

ENTERED: May 18, 2016.

s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT

6